30`

William Cafaro, Esq.
*Partner*
ADMITTED IN NY, CA, MD & TX
Email: bcafaro@cafaroesq.com

Amit Kumar, Esq.
*Managing Attorney*
ADMITTED IN NY & NJ
Email: akumar@cafaroesq.com

Andrew S. Buzin, Esq.
*Of Counsel*
ADMITTED IN NY, FL & DC

**LAW OFFICES OF WILLIAM CAFARO**

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
www.cafaroesq.com

Louis M. Leon, Esq.
*Associate*
ADMITTED IN NY
Email: lleon@cafaroesq.com

Matthew S. Blum, Esq.
*Of Counsel*
ADMITTED IN NY
Email: mblum@cafaroesq.com

June __18__, 2024

***Via* ECF**
Hon. Ramon E. Reyes, U.S.D.J
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re: Bulger v. Lucharitos Center Moriches, Inc. et al
        Case No.: 2:23-cv-03765-RER-SIL

Your Honor:

  We represent Plaintiff in the above-referenced case brought pursuant to, *inter alia*, Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against Defendants. We submit this letter, on behalf of all Parties, consistent with *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request the Court approve the terms of the Parties' settlement agreement,[1] a copy of which is attached hereto as **Exhibit 1**. As explained further below, the Parties respectfully aver that the proposed settlement agreement is fair, and reasonable.

  **I.**  **Background and Claims**

  According to the Plaintiff, the Defendants own and operate several restaurants on Long Island. According to Ms. Bulger she worked for Defendants from October 1, 2021 to on or about April 20, 2023 as a server and bartender. Throughout her employment, her job duties included, but are not limited to, waiting on customers, taking orders, making drinks as well as taking payment from Defendants' customers. According to Ms. Bulger, throughout her employment, she worked Tuesdays from 11:00am until 10:00pm, Thursdays from 10:00am until 4:00pm; and Fridays from 10:30am until 10:30pm. Along with this schedule from June 1 through August 31 she worked Wednesdays from 4:00pm until 10:00pm and Saturdays from 4:00pm until 11:00pm. Lastly, Ms.

---

[1] The Parties have executed a separate settlement agreement to resolve Plaintiff's NYLL retaliation claims asserted in the Complaint. Courts in this Circuit have found bifurcated settlement arrangements, whereby parties submit their FLSA settlement agreement (the "FLSA Settlement") for court approval (which are the only claims that are subject to Court approval) and settle non-FLSA claims, including NYLL claims, by private agreement (the "Non-FLSA Settlement"), acceptable. *See, e.g., Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016); *Rodriguez v. Gemco Realty II, LLC*, 2017 U.S. Dist. LEXIS 193664 (S.D.N.Y. Nov. 21, 2017); *Santos v. Yellowstone Prop., Inc.*, 2016 WL 2757427 (S.D.N.Y. May 10, 2016). The unsubmitted, Non-FLSA Settlement does not relate to Plaintiff's FLSA claims.

Bulger claims to have worked 45 minutes off the clock per shift in order to complete the side work Defendants assigned to her. According to her best recollections, Plaintiff worked a total of 31.25 hours per week except during the summer when she worked 44.75 hours per week. She further alleged that she was paid the tipped minimum wage of $10.00 per work hour. Given these claims, Ms. Bulger filed a complaint for violations under the FLSA and NYLL.

Defendant Jennifer LaMaina denies that she is an owner, officer or employee of any of the corporate Defendants or that she has any obligations toward Plaintiff. The corporate Defendants and Defendant Marc LaMaina vehemently dispute the Plaintiff's claims, as to any alleged wrongdoing, including alleged underpayments, and alleged wage statement violations. In challenging Ms. Bulger's claims, the Defendants raised various defenses and put forth pages of documents which they contend contradict the Plaintiff's claims including, the dates worked, the hours worked, and the amounts paid.

## II. The Settlement Reached Between the Parties

After the filing the case, participating in extensive pre-mediation discovery, and participating in a mediation with Patrick Michael McKenna, the Parties were able to arrive at a fair settlement of **$31,000.00**, which the Parties believe is fair and reasonable under the circumstances. Although there was delay in finalizing the settlement agreement, a fair agreement was ultimately executed. With respect to the release language in the Agreement, Plaintiff has executed a release of claims related to her compensation by Defendant, and the Agreement contains no confidentiality provision. *See, Barbecho v. M.A. Angeliades, Inc.*, 2017 U.S. Dist. LEXIS 48595, at *6 (S.D.N.Y. Mar. 30, 2017) (rejecting FLSA settlement containing a "general release that r[an] only in favor of defendants"); *Thallapaka v. Sheridan Hotel Assocs. LLC*, No. 15cv1321, 2015 U.S. Dist. LEXIS 117179, at *2-3 (S.D.N.Y. Aug. 17, 2015) ("[T]he overwhelming majority of courts reject the proposition that FLSA settlements can be confidential.").

Plaintiff's counsel strongly believes that the **$31,000.00** FLSA Settlement is an optimal result under the circumstances. Defendants firmly believe they would succeed on the merits of the case using witnesses, and documentary and other relevant evidence. While Plaintiff (and the undersigned) believe Plaintiff would have been able to prevail at a higher figure - after unnecessarily running up a higher lodestar - this would have entailed significant risk and would have been irresponsible. As this is our client's case, her desire to settle this action should govern. Plaintiff undoubtedly desired to resolve this matter, as did Defendants. Furthermore, each party is represented by experienced counsel. Our practice focuses on employment law and we handle a significant volume of FLSA cases.

## III. The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona*

*fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, *supra* at 335.

*Plaintiff's Range of Possible Recovery*

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). Here, while Plaintiff alleges entitlement to damages, Defendants aver that she was properly paid at all times and therefore is not entitled to any damages whatsoever under applicable law.

The settlement represents approximately 90% of Plaintiff's alleged *full* damages in this case, *inclusive of liquidated damages*. In light of the totality of the circumstances, the settlement represents a reasonable compromise of disputed claims in this matter. The settlement eliminates risks and ensures the Plaintiff will receive a meaningful amount of wages due even after paying the legal fee.

*Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

A "presumption of fairness, adequacy and reasonableness may attach to a settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties engaged in extensive pre-mediation discovery and participated in arm's length settlement discussions in order to arrive at this settlement. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

*Possibility of Fraud or Collusion*

There is no possibility this settlement was precipitated by reason of "overreaching" by the employer. To the contrary, the settlement was the result of arm's-length negotiations at mediation

and after heavily discussing/disputing the merits of the case. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. Moreover, because the Plaintiff left the Defendants' employ prior to the commencement of the action, there has not been, nor could there have been, any undue influence exercised upon Plaintiff in the workplace which could have precipitated this settlement.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel and were at arm's-length. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

**IV. Plaintiff's Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount Plus Out of Pocket Costs**

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering this extremely favorable result. Under the retainer agreement, Plaintiff's counsel would be entitled to a one-third fee on the gross recovery of $31,000.00, which equates to $10,333.33, plus out-of-pocket costs and disbursements, which total $1,280.00, consisting of the following:

| Disbursements | | |
|---|---|---|
| Company | Amount | Description |
| Filing Fee | $ 402.00 | Cost for filing in Court |
| Servico | $ 338.00 | Service on Corp |
| Gotham | $ 240.00 | Service on Ind Defendants |
| Mike McKenna | $ 300.00 | Mediator Fee |
| Total | $ 1,280.00 | |

The above are reasonable out of pocket disbursements incurred by attorneys and ordinarily charged to the file. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). In support of this fee request, the undersigned submits as follows:

Plaintiff's counsel is entitled to reasonable attorneys' fees to compensate for work in recovering alleged withheld compensation in this action. I have personally expended **68.3 hours** in the prosecution of this case. *See,* **Exhibit 2**, Attorney Kumar's time records. "To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (citing *In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

I have been an associate with the Law Offices of William Cafaro since 2013 and the Managing Attorney of the firm since 2017. I earned my B.B.A. with dual concentrations in Finance

and Computer Information Systems, *cum laude*, from George Washington University in 2005 and a J.D from Hofstra University School of Law in 2012. While in law school, I worked as a law clerk for several employment law firms, including Schwartz & Perry, LLP[2] and Outten & Golden LLP. Also, while in law school, I was a judicial intern for United States Magistrate Judge Ronald L. Ellis (ret.) of the Southern District of New York. I was admitted to practice in the state courts of New York and New Jersey in 2013 and later that same year I was admitted to practice before the Southern and Eastern Districts of New York. I was further admitted to the Federal District Court of New Jersey in 2019 and the Northern District of New York in 2023. Since joining the firm, I have been responsible for actively handling and maintaining a case load which at any given time are in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal courts from their inception through trial or resolution. Further, while working at the firm, I have conducted numerous trials (both bench and before a jury) and arbitrations on behalf of employees in employment law disputes, including wage and hour matters. Moreover, I have been selected as a "Rising Star" by Super Lawyers in the "Employment Litigation" category for the years 2017-2023, inclusive. I was also an officer of the South Asian Bar Association of New York in the years 2018 and 2019 and I am currently a member of the National Employment Lawyers Association – New York Chapter. Moreover, in addition to representing plaintiffs who are current or former employees retained on a contingency fee basis, this Firm also represents some clients who pay hourly rates to the firm in employment litigation matters. Of those clients, depending on each client's respective financial abilities, clients have agreed to compensate the undersigned at rates of $300.00 to $400.00 per hour.

Given my experience, the Plaintiff is requesting that the Court approve me at a rate of $300.00 per hour for my work on this case. This rate is reasonable based on my experience. *See, Yu Wei Cao v. Miyama, Inc.*, 2020 U.S. Dist. LEXIS 149336, at *3-*8 (E.D.N.Y. Aug. 18, 2020) (awarding $300.00 per hour for a senior associate with 5 years' experience).

At the requested rate, the total lodestar is **$20,490**. In this case, the loadstar is greater than the requested fee representing uncompensated work by Plaintiff's counsel.

V.   **Conclusion**

For the reasons set forth above the Parties request that the Court approve the settlement as reflected in the Agreement. Plaintiff's counsel further requests that the Court approve the attorneys' fee award and requested costs reflected in the Agreement as fair and reasonable.

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO

*/s/ Amit Kumar*

By: Amit Kumar, Esq.
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018
(212) 583-7400

---

[2] Now called Schwartz Perry & Heller, LLP

AKumar@CafaroEsq.com

LEGAL\69474276\1                                6